# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

Filed: July 12, 2017

* * * * * * * * * * * * * * * * * * * * * UNPUBLISHED

LINDSEY PELTON, *parent of* N.L.P., *deceased*,

Petitioner,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Respondent.

* * * * * * * * * * * * * * * * * * * * *

No. 14-674V

Chief Special Master Dorsey

Reasonable Attorneys' Fees and Costs; Hourly Rates; Time Expended.

Patricia Finn, Patricia Finn Attorney, P.C., Piermont, NY, for petitioner.
Ryan Pyles, U.S. Department of Justice, Washington, DC, for respondent.

**DECISION ON ATTORNEYS' FEES AND COSTS[1]**

On July 29, 2014, Lindsey Pelton ("petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program on behalf of her deceased son, N.L.P.[2] 42 U.S.C. §§ 300aa-1 to 34 (2012). Petitioner alleged her son's death on August 24, 2012, was causally related to the diphtheria-tetanus-acellular pertussis ("DTaP"), hepatitis B ("Hep B"), inactivated poliovirus ("IPV"), haemophilus influenzae type b ("Hib"), pneumococcal conjugate, and/or a rotavirus vaccination administered on August 23, 2012. Petition at Preamble, ¶ 3.

---

[1] Because this decision contains a reasoned explanation for the undersigned's action in this case, the undersigned intends to post this ruling on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012)(Federal Management and Promotion of Electronic Government Services). As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b).

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to 34 (2012) ("Vaccine Act" or "the Act"). All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C.A. § 300aa.

On February 2, 2017, the undersigned issued a ruling on the record and found that petitioner was not entitled to compensation. Decision filed February 2, 2017 (ECF 57). Subsequent to that decision, petitioner filed an application for attorneys' fees and costs requesting $14,463.75 in attorneys' fees and $17,302.02 in expert fees and costs. Petitioner's Final Application for Attonrey's [*sic*] Fees and Costs ("Pet.'s App.) filed March 16, 2017 (ECF 59). This was later amended to $17,363.75 in attorneys' fees for a total of $34,665.77 requested in attorneys' fees and costs.[3] Petitioner's Reply in Support of the Application for Attonrey's [*sic*] Fees and Costs ("Pet.'s Reply") filed April 25, 2017. For the reasons stated below, the undersigned awards $8,788.94 in attorneys' fees and $15,477.02 in costs for a total of $24,265.96.

## I. Factual and Procedural History

Petitioner filed her petition *pro se* on July 29, 2014. In it, she alleged that the vaccines her son received on August 23, 2012 caused his death on August 24, 2012. Petition filed July 29, 2014 (ECF 1). Subsequent to the filing, Patricia Finn became the attorney of record on March 2, 2015. Motion to Substitute Attorney filed March 2, 2015 (ECF 12); Order Granting Motion to Substitute Attorney filed March 3, 2015 (ECF 13). Respondent filed a Rule 4 Report on August 26, 2015, after which petitioner filed her statement of completion on September 25, 2015. On December 7, 2015, petitioner than filed an export report from Dr. Laurel Waters claiming N.L.P.'s death was not due to asphyxia, rather it was Sudden Infant Death Syndrome ("SIDS") caused by the vaccines he had received the previous day. Pet. Ex. 16 at 10.

On July 19, 2016, the undersigned issued a Rule 5 Order informing the parties that no reasonable basis for the claim existed and no attorneys' fees or costs would be reimbursed from that date forward. Rule 5 Order filed July 19, 2016 (ECF 47). Petitioner filed a motion for a ruling on the record and on February 2, 2017, the undersigned issued a decision dismissing petitioner's petition. Motion filed October 11, 2016 (ECF 54); Decision filed February 2, 2017 (ECF 57).

On March 16, 2017, petitioner filed an application for attorneys' fees and costs requesting $14,463.75 in attorneys' fees for her attorney, Patricia Finn, and $17,302.02 in costs. Pet. App. at 3. The application covers fees incurred from February 25, 2015, through March 14, 2017. Pet.'s App. Attachment 1 at 7, 15. Respondent filed an opposition to this motion stating that the petition did not have a reasonable basis and that attorneys' fees and costs should not be awarded. Respondent's Opposition (Resp. Opp.) at 1. On April 25, 2017, petitioner filed a reply in support of her application and requested $17,363.75 in attorneys' fees and $17,302.02 in costs. Pet. Reply at 1. This application covers fees incurred from February 25, 2015, through April 24, 2017, the extended time frame explaining the increase in requested amount. Id. Attachment 3 at 1, 8. Petitioner's filings included the billing records of Ms. Finn and her associates as well as those of her expert, Dr. Waters, and other outside expenses. Pet. App. Attachment 1; Pet. Reply. Attachment 3.

[3] In petitioner's reply, costs were calculated incorrectly; petitioner should have requested adjusted costs of $17,377.02. As this is higher than what was actually requested, the award will be based on this higher amount.

On April 27, 2017, the undersigned ordered petitioner to clarify her billing records and include the identity and credentials of all parties who appear in the records.[4] See Order filed April 27, 2017 (ECF 66). Petitioner filed a status report on May 25, 2017, providing additional information.[5] Status Report filed May 25, 2017 (ECF 67).

This matter is now ripe for adjudication on petitioner's motion for attorneys' fees and costs.

## II. Analysis

Respondent argued that, as there was no reasonable basis for the petition, attorneys' fees and costs should not be awarded. Resp.'s Opp. at 1. While the undersigned finds that the petition was filed in good faith, reasonable basis is a more complicated inquiry. Ultimately, the undersigned finds there was a reasonable basis for the claim up until the Rule 5 Order was filed on July 19, 2016.

Though the undersigned finds there is a reasonable basis to compensate for some of the time billed, the entirety of the requested amount will not be awarded. While respondent did not contest the billing rate or specific entries, the undersigned has the discretion to reduce awards sua sponte, independent of enumerated objections. Sabella v. Sec'y of Health & Humans Servs., 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); Savin v. Sec'y of Health & Human Servs., 85 Fed. Cl. 303 (Fed. Cl. 2008) *aff'g* No. 99-537V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

### a. Basis for Awarding Attorneys' Fees and Costs

Under the Vaccine Act, petitioners are able to recover "reasonable attorneys' fees" and other costs. 42 U.S.C. §§ 300aa-15(e)(1) (2012). Even if petitioner is not awarded compensation for her claim, she is still permitted to collected attorneys' fees and costs if "the petition was brought in good faith and there was a reasonable basis." Id. Respondent does not

[4] Petitioner's original application did not include the full names of the parties whose initials appeared on the attorney's billing invoice. Additionally, petitioner did not provide the undersigned with their credentials, resumes, or any other documentation in support of the requested rates.

[5] Despite the undersigned requesting a more detailed invoice from Dr. Waters, no adequate invoice was provided. The original invoice, submitted on March 16, 2017, billed all the hours spent on the case without any differentiation between activities or temporality. The second invoice, submitted on May 25, 2017, only listed activities and hours performed each month. The Guidelines for Practice indicate experts need to submit "contemporaneous, dated records indicating the amount of time spent on each task," while "each task should have its own line entry indicating the amount of time spent on that task." Office of Special Masters, Guidelines for Practice under the National Vaccine Injury Compensation Program (Rev. Ed.2004) §§ X.Chapter 2.D, X.Chapter 3.B.1.b. The undersigned will pay Dr. Waters's invoice in this case but cautions that she may not do so in the future if the expert's invoice does not adhere to the Guidelines.

offer an opinion on whether the claim was brought in good faith, but he argues that there is no reasonable basis. As a result, he believes petitioner's application should be denied in full.

**1. Good Faith**

The good faith requirement is met through a subjective inquiry. Di Roma v. Sec'y of Health & Human Servs., No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." Grice v. Sec'y of Health & Human Servs., 36 Fed. Cl. 114, 121 (1996). Thus, so long as petitioner had an honest belief that her claim could succeed, the good faith requirement is satisfied. See Riley v. Sec'y of Health & Human Servs., No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing Di Roma at *1); Turner v. Sec'y of Health & Human Servs., No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). In this case, the record supports the supposition that petitioner brought the claim in a sincere belief that vaccines caused the death of her son, N.L.P. See Petition filed July 29, 2014 (ECF 1). As such, the undersigned finds the claim was brought in good faith.

**2. Reasonable Basis**

It is incumbent on the petitioner to "affirmatively demonstrate a reasonable basis," which is an objective inquiry. McKellar v. Sec'y of Health & Human Servs., 101 Fed. Cl. 297, 305 (2011); Di Roma at *1. The special master examines "the feasibility of the claim," as determined by factors such as "the factual basis [and] the medical support." Di Roma at *1. This "totality of the circumstances" approach allows the special master to look at each application for attorneys' fees and costs on a case by case basis. Hamrick v. Sec'y of Health & Human Servs., No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

Unlike the good faith inquiry, reasonable basis requires more than just petitioner's belief in her claim. See Turner at *6. Instead, the claim must at least be supported by medical records or medical opinion. Sharp-Roundtree v. Sec'y of Health & Human Servs., No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015). Normally, the court would expect the attorney to make a pre-filing inquiry into the claim to ensure that it has a reasonable basis. See Turner at *6-7. However, that expectation may be lessened by the circumstances as "special masters have historically been quite generous in finding reasonable basis for petitions." Turpin v. Sec'y of Health & Human Servs., No. 99-564V, 2005 WL 1026714, at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005); see Turner at *6-7. For instance, the court has been lenient when the statute of limitations was about to expire or if the petition was originally filed *pro se*. See Turner at *6. The presence of either of these situations can lower the bar for establishing reasonable basis. It has also become the habit of the court to allow petitioners to file "skeletal" petitions where reasonable basis is later reinforced with medical records and expert opinions. Turpin at *2.

Even if an expert's opinion is later deemed unpersuasive or insufficient, the case can still be said to have a reasonable basis up until that point. Heath v. Sec'y of Health & Human Servs., No. 08-86V, 2011 WL 4433646, at *8 (Fed. Cl. Spec. Mstr. Aug. 25, 2011). However, a case that was filed with a reasonable basis can lose that status at any point during the litigation as

more facts are discovered. See Brannigan v. Sec'y of Health & Human Servs., No. 14-675, 2016 WL 3886297, at *6-7 (Fed. Cl. Spec. Mstr. Jun. 17, 2016); Perreria v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 33-34 (Fed. Cl. 1992) *aff'g* No. 90-847V, 1992 WL 164436 (Cl. Ct. Spec. Mstr. Jun. 12, 1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994).

Heath is particularly relevant to the case at hand. In that instance, the petition was filed close to the statute of limitations without any medical records. Heath at *9. Petitioner later obtained an expert report that hypothesized vaccination as the causal agent. Id. Although the special master eventually determined the expert's report was inadequately supported by the record and medical literature, attorneys' fees and costs were awarded to petitioner for expenses incurred up until that point. See id. at *9-10 and 12. In the fees decision, the special master held that factual debates are not uncommon and petitioner is "not bound to accept the accounts in the medical records," as the complete and only facts. Id. at *12. It is not unreasonable for petitioner to accept an expert's report as true up until it is determined to be unsupported.

The case at hand was originally filed *pro se* with no medical records attached. Indeed, no medical records were filed until after Ms. Finn became the attorney of record. According to her billing records, Ms. Finn's original "intake call" with petitioner occurred approximately one week prior to her motion to substitute as counsel of record and thus, had not reviewed the medical records at that time. Pet. Resp. Attachment 3 at 1; Motion to Substitute Attorney filed March 3, 2015 (ECF 12). Upon receipt of the records though, she promptly filed them with the court. Petitioner's Exhibits ("Pet. Exs.") 1-7 filed April 4, 2015 (ECF 17). In her status report filed May 15, 2015, Ms. Finn included preliminary conclusions from two separate physicians casting doubt on the autopsy's listed cause of death. Status Report filed May 15, 2015 (ECF 19). When the undersigned continued to express doubts that the case had a reasonable basis, petitioner supplied an expert report from Dr. Waters linking N.L.P.'s death to vaccine administration.

As the petition was originally filed *pro se*, it is permissible that medical records were not filed until after Ms. Finn's appearance. Due to this timeline, it is also understood that Ms. Finn was not able to conduct any inquiries in to the reasonable basis for the claim until after it was filed. As the bar is lowered for petitions filed *pro se*, the undersigned finds there was a reasonable basis for this claim to be filed. Ms. Finn supplied statements from two physicians suggesting the cause of N.L.P.'s death was vaccine related. She later filed a complete report from another physician in an attempt to rebut the conclusions of the autopsy report. It was reasonable for petitioner to rely on the conclusions drawn by these experts in continuing to pursue her claim. However, as the Rule 5 Order demonstrates, this case was eventually determined to have no reasonable basis. Rule 5 Order filed July 19, 2016 (ECF 47). Although the case lost its reasonable basis, petitioner is entitled to attorneys' fees and costs for the time period in which there was a reasonable basis.

**b. Attorneys' Fees**

**1. Reasonable Hourly Rate**

Ms. Finn requests $400.00 per hour for work performed by her in 2015-2016. Pet. Resp. Attachment 3. Ms. Finn does not bill any time in 2017. Id. The billed rate is inconsistent with those recorded in the Office of Special Masters' Attorneys' Forum Hourly Rate Fee Schedule for an attorney of her experience.[6, 7] Ms. Finn practices in Piermont, New York, a suburb of New York City. Petitioner's counsel is thus entitled to forum rates, as the hourly rates in New York City are not significantly lower than forum rates. See Rowan v. Sec'y of Health & Human Servs., No. 10-272, 2014 WL 3375588, at *3 (Fed. Cl. Spec. Mstr. Jun. 19, 2014). Ms. Finn has experience in the program, and the undersigned has previously awarded her $316.00 per hour for work performed in 2015. Rowan v. Sec'y of Health & Human Servs., No. 10-272V, (Fed. Cl. Spec. Mstr. filed Dec. 30, 2015). This rate has also been adopted by other Special Masters. Murphy v. Sec'y of Health & Human Servs., No. 05-1063V, 2017 WL 1718800, at *4 (Fed. Cl. Spec. Mstr. Apr. 3, 2017); Echevarria v. Sec'y of Health & Human Servs., No. 15-100V, 2016 WL 6872975, at *3 (Fed. Cl. Spec. Mstr. Oct. 28, 2016); Brannigan at *9. In accordance with these decisions, the undersigned awards Ms. Finn $316.00 per hour in 2015. This rate falls within the Fee Schedule's recommended rate for a lawyer with 11-19 years of practice. The undersigned awards her $316.00 per hour for work performed in 2016 as well.

Ms. Finn requests $200.00 per hour for work performed by her paralegal, Jessica Wallace, in 2015 through 2017. This rate also exceeds the Forum Hourly Rate Schedule.[8] Ms. Finn asserts that Ms. Wallace is entitled to a higher rate since she holds a J.D. and is experienced with the Vaccine Injury Program. However, an hourly rate is based on the type of work performed, not the qualifications of the person performing the work. See Doe/11 v. Sec'y of Health & Human Servs., No. XX-XXXV, 2010 WL 529425, at *9-10 (Fed. Cl. Spec. Mstr. Jan. 29, 2010) (citing Missouri v. Jenkins, 491 U.S. 274, 228 (1989)). Even practicing attorneys get paid at a paralegal rate when performing paralegal work. Mostovoy v. Sec'y of Health & Human Servs., 2016 WL 720969, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2016). Previously, Ms. Wallace has been awarded $102.00 per hour for work performed in 2015. See Rowan 2014 WL 3375588; Brannigan. This is less than the forum rates from McCullough. Special masters are permitted to "make an upward or downward departure to the fee award based on other specific findings," and the undersigned increases Ms. Wallace's fee to meet forum rates. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1348 (Fed. Cir. 2008). According to the fee schedules, paralegals are entitled to $125.00-145.00 per hour of work performed in 2015 through 2016 and $128.00-148.00 per hour in 2017. As Ms. Wallace has over eight years of experience with the Vaccine

---

[6] The 2015-2016 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule2015-2016.pdf. The hourly rates contained within are from the decision McCulloch v. Sec'y of Health & Human Servs., No. 09-093V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

[7] Ms. Finn did not provide her own resume. Her years of practice were determined from the information provided on her website, http://www.patriciafinnattorney.com/practice-areas-1.html. As she was admitted to the New York bar in 2003, she falls in to the category of lawyers with 11-19 years of experience.

[8] See *supra*, note 5. The 2017 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2017.pdf.

Program, she is entitled to a rate on the higher end of that range. See Status Report filed May 25, 2017 (ECF 67). Thus, the undersigned awards Ms. Wallace $135.00 per hour for her work in 2015 and 2016, and $138.00 per hour for her work in 2017.

Ms. Finn's invoice bills $145.00 per hour for work performed by her legal nurse consultant, Jill Rubolino. The Fee Schedule does not include a rate for this type of professional, though Ms. Finn alleges the industry rate is $85.00-250.00 per hour. Status Report filed May 25, 2017 (ECF 67). However, in the Status Report filed May 25, 2017, Ms. Finn contends that $125.00 is a reasonable hourly fee. Id. The undersigned finds no reason to disagree, and accordingly, awards Ms. Rubolino $125.00 per hour.

**2. Reasonable Time Expended**

As a preliminary matter, the undersigned reduces petitioner's application for all of the time billed after the Rule 5 Order that is not related to wrapping up the case. This includes all of the time billed by Ms. Rubolino as well as some of the time billed by Ms. Wallace.

**i. Time Billed After the Rule 5 Order Filed on July 19, 2016**

Pursuant to the Rule 5 Order filed July 19, 2016, petitioner was advised there was no longer a reasonable basis for the case and that, as such, "no attorneys' fees or costs [would] be paid going forward." See Order filed July 19, 2016 (ECF 47). Despite this statement, petitioner's counsel, her employees, and her expert continued to bill time in the case, accruing over 51 hours of work. The undersigned understands that time must be spent winding up the case, including the drafting and filing of an application for attorneys' fees and costs, and she compensates petitioner for this time.[9] However, the undersigned will not compensate for time spent on tasks not related to winding up the case, such as compiling and filing Dr. Waters's reply report. As this report was not necessary to the conclusion of the case, the undersigned deducts the 10.6 hours spent preparing and filing the report, a total of $1,431.30, from Ms. Wallace's billing record.[10]

Petitioner has also failed to state why it was necessary for Ms. Rubolino, a legal nurse consultant, to continue to participate in the case after the Rule 5 Order on July 19, 2016.[11] Since

[9] The undersigned will compensate for the 12.6 hours of time billed for preparing the motion for a ruling on the record and compiling the application for attorneys' fees and costs.

[10] An additional problem noted in the billing record during this time period is duplicative billing. On August 12, 2016 and August 17, 2016, Ms. Wallace spent a total 8.5 hours reviewing Dr. Waters's expert report, preparing the literature, and filing it all. Pet.'s Resp. Attachment 3 at 7. These two entries were nearly identical. The court historically has not compensated for duplicative, or indistinguishable, entries. See Savin 2008 WL 2066611, at *3.

[11] Ms. Rubellino billed 3 hours on July 27, 2016 for a phone conference and to review an "order"; 8 hours on August 9, 2016 for a phone conference and to "review SIDS decisions"; 6 hours on August 10, 2016 for "SIDS cases summary"; 0.25 hours on August 11, 2016 to "review

the undersigned already determined that no reasonable basis existed after July 19, 2016, there was no reason for Ms. Rubolino to continue to perform research.[12] Accordingly, petitioner will not be compensated for the 17.75 hours Ms. Rubolino billed after July 19, 2016, and $2,218.75 will be deducted from petitioner's award.

**ii. Administrative and Paralegal Tasks Billed**

The Court has routinely held that "billing for clerical and other secretarial work is not permitted in the Vaccine Program." Mostovoy at *5 (citing Rochester v. United States, 18 Cl. Ct. 379, 387 (1989)); see Macrelli v. Sec'y of Health & Humans Servs., No 98-103, 2002 WL 229811, at *7 (Fed. Cl. Spec. Mstr. Jan. 30, 2002). Rather, these costs "should be considered as normal overhead… included within the attorneys' fees rates." Rochester at 387. Clerical work includes arranging meetings, filing, and handling invoices. See Mostovoy at *5; Anderson v. Sec'y of Health & Human Servs., No. 06-168, 2007 WL 4527545, at *2 (Fec. Cl. Spec. Mstr. Dec. 7, 2007). Ms. Wallace billed time for scheduling calls with the client, filing numerous documents with the court, and arranging for invoices from Dr. Waters and others.[13] Also, all of the time billed by Ms. Wallace for determining the location of the autopsy slides and arranging for them to be sent to the correct location is most appropriately classified as clerical work.

Additionally, attorneys who perform paralegal work will only be compensated at a paralegal rate. See Mostovoy at *5. According to the billing records submitted, Ms. Wallace typically performs the drafting duties for Ms. Finn.[14] As such, these tasks are considered paralegal in nature, even when Ms. Finn performs them. The undersigned does not wish to conduct a line-by-line evaluation of petitioner's billing records and does not further reduce her application for incorrectly billing administrative and paralegal tasks. However, she warns Ms. Finn that in the future, no clerical time will be compensated, and any paralegal tasks performed by an attorney will only be compensated at a paralegal rate.

**iii. Block Billing**

---

report"; and 0.50 hours on October 11, 2016 to review medical literature for a total of 17.75 hours.

[12] Additionally, part of the time Ms. Rubolino billed on July 27, 2016, was for a phone conference in which Ms. Wallace also participated, and for which she also billed time. Duplicative billing will not be compensated. See Thomas v. Sec'y of Health & Human Servs., No. 12-309V, 2013 WL 5718948, at *5 (Fed. Cl. Spec. Mstr. Sept. 26, 2013).

[13] For example, Ms. Wallace billed time for filing on July 7, 2015; July 20, 2015; and September 25, 2015. She also billed for scheduling on April 22, 2015 and August 28, 2015 among other dates.

[14] See examples on April 2, 2015; July 7, 2015; July 20, 2015; July 28, 2015; August 10, 2015; November 20, 2015; August 17, 2016; October 11, 2016; March 14, 2017; and April 21, 2017.

Any line entry that "lump[s] together several unrelated tasks… frustrates the court's ability to assess the reasonableness of the request." Office of Special Masters, Guidelines for Practice under the National Vaccine Injury Compensation Program (Rev. Ed.2004) § XIV.A.3. This practice is generally discouraged and, in the past, the undersigned has refused to compensate Ms. Finn for block billing. See Rowan 2014 WL 3375588 at *5. The final entry on Ms. Finn's invoice bills for a block of 11 hours of work on April 24, 2017. The description of activities is vague but includes "multiple emails and phone calls with Dr. Waters, review of the case docket,… continued to draft reply motion, updated invoice," and more. See Pet. Resp. Attachment 3 at 8. The undersigned is unable to accurately determine how much time was spent on each these disparate tasks. As such, this time will not be compensated. The undersigned reduces Ms. Wallace's billing record for this day by 20%, or $303.06.

**c. Costs**

In addition to reasonable attorneys' fees, the submitted costs must also be reasonable. Perreria, 27 Fed. Cl. at 34. Petitioner has requested $16,125.00 to compensate Dr. Waters, and $1,177.02 in other accrued costs. Pet.'s App. at 3.

**1. Expert Fee for Dr. Waters**

"Fees for experts are subject to the same reasonableness standards as fees for attorneys." Baker v. Sec'y of Health & Human Servs., No. 99-653, 2005 WL 589431, at *1 (Fed. Cl. Spec. Mstr. Feb. 24, 2005). Nor is the court responsible for notifying petitioner of any potential discounts due to inadequate information. See Saunders v. Sec'y of Health & Human Servs., 26 Cl. Ct. 1221, 1226 (Cl. Ct. 1992). Rather, it is "counsel's responsibility to submit proof sufficient to support the point in issue." Id.

**i. Hourly Rate**

The court has previously delineated a list of considerations to determine if an expert's rate is reasonable. Included among those items is the expert's experience with the program, the expert's publications, the clarity of the billing record, and the nature of the information provided. Simon v. Sec'y of Health & Human Servs., No. 05-941V, 2008 WL 623833, at *3-5. Dr. Waters is new to the Program, and according to her curriculum vitae, she has only published four papers, the most recent being in 1999.[15] See Pet.'s Exhibit 17. The nature of the information Dr. Waters provided was also weak, and one factor contributing to the closure of this case was the paucity of

---

[15] A WestLaw search for Dr. Laurel Waters pulled up the case at hand and one other, Konrick v. Exxon Mobil, No. 14-524, 2016 WL 439361 (E.D. La. Feb. 4, 2016). In that case, Dr. Waters' expert testimony was excluded and the case dismissed, as the judge found the testimony was based on unreliable methodology and studies that "[did] not reliably support or… otherwise 'fit' [Dr. Waters'] conclusion." Id. at *12.

information Dr. Waters provided to support her theorized link between the vaccinations N.L.P. received and SIDS.[16] See Rule 5 Order at 2.

In determining the appropriate hourly rate for Dr. Waters, the undersigned notes that Dr. Waters billed at two different hourly rates. In the invoice filed March 16, 2017, she billed at a rate of $500.00 per hour, while the invoice filed May 25, 2017 lists a rate of $400.00 per hour. Another factor to consider when evaluating her rate is that Dr. Waters' billing statement is vague and ambiguous even after the court requested a detailed invoice.[17] In the past, the undersigned has refused to compensate experts for vague billing. Raymo v. Sec'y of Health & Human Servs., No. 11-654, 2016 WL 7212323, at *20-21 (Fed. Cl. Spec. Mstr. Nov. 2, 2016) *aff'd* 129 Fed. Cl. 691 (Fed. Cl. 2016); see Mostovoy at *15-16. It is incumbent upon the petitioner to monitor expert fees to ensure they remain reasonable. See Simon at *2. As physicians who are well known to the court, with far more extensive resumes, are awarded $500.00 per hour, the undersigned finds it is reasonable to award Dr. Waters $400.00 per hour for her time.[18]

### ii. Billed Hours

In the application submitted March 16, 2017, petitioner included a statement from Dr. Waters for 32.25 hours of work. See Pet.'s App. Attachment 1 at 15. However, when the undersigned requested a more detailed bill, Dr. Waters submitted one for 40.5 hours of work.[19] See Pet. Resp. Attachment 3. As explained previously in this decision, neither invoice is sufficiently detailed. The discrepancy in the total billed amount resulting from differing total hours and hourly rates leads the undersigned to more closely examine Dr. Waters' invoice.

Subsequent to the Rule 5 Order, Dr. Waters continued to bill her time. In July 2016, she billed 11.5 hours of work, and in August 2016, she billed 4.25 hours. Pet. Resp. Attachment 3. At the time the Rule 5 Order was issued on July 19, 2016, petitioner indicated Dr. Waters had already prepared her response to respondent's expert report. If that was indeed the case, her

---

[16] In that decision, the undersigned found that there was "a significant analytical gap between Dr. Waters's theory and the generally-accepted science" and that Dr. Waters did not offer "any… reliable basis upon which to credit her opinion." Rule 5 Order at 10.

[17] As explained previously, the final statement showed activities per month rather than per day. Additionally, she billed for "Legal Document Review" in November, 2015 without any explanation of what documents were reviewed.

[18] See Daniel v. Sec'y of Health & Human Servs., No. 10-745, 2016 WL 7785955, at *3 (Fed. Cl. Spec. Mstr. Dec. 21, 2016) (granting both Dr. Souayah and Dr. Steinman $500.00 per hour); Rowan 2014 WL 3375588, at *6 (awarding Dr. Shoenfeld $500.00 per hour); Brown v. Sec'y of Health & Human Servs., No. 09-426V, 2012 WL 952268, at *10 (Fed. Cl. Spec. Mstr. Feb 29, 2012) (giving Dr. Steinman $450.00-500.00 per hour).

[19] As the billed rate also varied between these two invoices, the total billed amount also changed. The amount petitioner requests in expert fees was never adjusted to reflect this difference nor did petitioner offer an explanation for why the billed hours changed.

activities in August 2016, and possibly July 2016, seem unnecessary. Dr. Waters did not separate her entries by day, rather she grouped them by month, making it impossible to know when in July she prepared her responsive report. As her response was not filed until August 17, 2016, it appears that Dr. Waters continued to research and write the report after the Rule 5 Order was issued. Granting the benefit of the doubt to petitioner, the undersigned compensates Dr. Waters for the time billed in July 2016, but she will not compensate for time spent in research and writing in August 2016 after the Rule 5 Order.[20] Applying the corrected hourly rate and billed hours, the undersigned discounts the expert's costs by $1,900.00.

### 2. Other Costs

Petitioner submitted statements from Medical Research Consultants for the retrieval of pmedical records. Petitioner also seeks compensation for "Complete Autopsy File with Slide Re-Cuts."[21] See Pet.'s Resp. Attachment 3 at 3. The undersigned finds these costs reasonable and awards them in full.

## III. Conclusion

Based on the above, the undersigned finds petitioner is entitled to reimbursement for attorneys' fees and costs as follows:

| **Attorneys' Fees** | |
|---|---|
| Requested: | $17,363.75 |
| Hourly Rate Reduction: | ($4,621.70) |
| Reduction for Time After Rule 5 Order: | ($3,650.05) |
| Reduction for Block Billing: | ($303.06) |
| Awarded: | $8,788.94 |
| | |
| **Costs** | |
| Requested:[22] | $17,377.02 |
| Reductions: | ($1,900.00) |
| Awarded: | $15,477.02 |
| | |
| **Total** | |
| Total Amount Awarded: | $24,265.96 |

Accordingly, the undersigned awards:

---

[20] The August, 2016 bill included 0.25 hours of communication with counsel, 1.00 hours of "Byard's Sudden Death in the Young" (presumed to be research), and 3.00 hours of report writing. Only the 0.25 hours of communication will be compensated.

[21] It is presumed by the court that this charge includes only the cost of the original slides and not the expense of re-ordering them after petitioner's expert lost that original set.

[22] This reflects the correctly calculated costs from petitioner's reply.

**A lump sum in the amount of $24,265.96, representing reimbursement for petitioner's attorneys' fees and costs, in the form of a check made payable to petitioner and her counsel, Patricia Finn Attorney, P.C.**

In the absence of a motion for review pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with this decision.[23]

**IT IS SO ORDERED.**

s/Nora B. Dorsey
Nora B. Dorsey
Chief Special Master

[23] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.